UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                              Criminal Case No. 17-20469

Jason Manning and Gregory Hendon,
                                              Sean F. Cox
    Defendants.                    United States District Court Judge

_____/

## **OPINION AND ORDER DENYING DEFENDANTS' MOTION TO SUPPRESS**

Five years ago, Detroit Police officers entered a known vacant apartment without a warrant. Inside, they found a shotgun, narcotics, and three men. Two of those men–Jason Manning and Gregory Hendon–have since been charged with various crimes stemming from the discovery of the firearm and narcotics. They have moved to suppress all evidence stemming from the warrantless entry, arguing that the officers violated their Fourth Amendment rights. For the reasons below, the Court shall deny their motion because Defendants have not shown that they had an objectively reasonable expectation of privacy in the vacant apartment.

## **BACKGROUND**

Defendants Jason Manning and Gregory Hendon face numerous charges in a third superseding indictment. Together, they are charged with: possession with intent to distribute heroin, 21 U.S.C. § 841(a)(1); possession of a firearm in furtherance of a drug trafficking offense, 18 U.S.C. § 942(c); and felon in possession of a firearm, 18 U.S.C. § 922(g)(1) (Doc. # 66). The indictment also charges some crimes specific to each Defendant. For Hendon, two counts: use and carry of a firearm during and in retaliation to a drug trafficking crime causing

death and crimes of violence causing death, 18 U.S.C. §§ 924(c) and (j), and conspiracy to possess with intent to distribute and to distribute controlled substances, 21 U.S.C. §§ 846 and 841(a)(1). For Manning, one count: possession with intent to distribute marijuana, 21 U.S.C. § 841(a)(1).

In December 2017, Hendon filed several motions, including a motion to suppress, with which Manning concurred (Doc. # 35, 36). The Court held a hearing on these motions on February 16, 2018, after which it issued an opinion and order resolving most of them but, at the parties' request, adjourning the hearing on the motion to suppress to allow the parties to determine whether an evidentiary hearing was required (Doc. # 54).

It was. The request evidentiary hearing proceeded slowly but surely across three dates in May: May 2, May 25, and May 29. The Government presented two witnesses–Detroit Police Sergeant Thomas Grzywacz and Detroit Police Officer Thomas Zberkot. It also introduced two exhibits–a videotaped interview between law enforcement officials and Manning and a proffer letter for David Griffin, the third man arrested in the apartment. The defense presented several witnesses–Griffin, William Van Slingerlandt, and Jay Van Slingerlandt–along with Manning, who testified on his own behalf.[1]

After the hearing, the Court allowed the parties to file supplemental briefs (Doc. # 63) and they have done so (Doc. # 67, 68, 70). So, having heard and observed the witnesses who testified at the evidentiary hearing, allowing for this Court to assess credibility, having considered the exhibits submitted by the parties, having considered the arguments presented by

---

[1] The three witnesses called by the defense invoked their Fifth Amendment privilege for almost all of the questions posed to them.

counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law.[2]

## FINDINGS OF FACT

This case, like many, involves two competing versions of events. The first, from the Government, was presented primarily through the testimony of Sergeant Grzywacz. He testified that on the night of August 3, 2013, he and his partner, Derek Loringer, were on patrol in an unmarked car on Peterboro Street in Detroit. This was a high-crime area, narcotics trafficking and violent crimes in particular, that was patrolled daily.

While on patrol, Grzywacz observed one or two people in the area, including a man he believed to be Gregory Hendon. Grzywacz was familiar with Hendon; he had previously written him loitering tickets and knew that "word on the street" was that Hendon trafficked narcotics. Upon seeing Grzywacz, Hendon immediately started running and entered a three-story residential apartment complex located at 473 Peterboro Street.

Grzywacz was well familiar with this location, having been to the apartment building many times. In his experience, it was a frequent spot for narcotics trafficking. A few weeks prior, Grzywacz had spoken to an individual with access to the building, who he believed to be the owner. That person indicated that all but two of the units in the building were vacant. Grzywacz also, at some point, received keys to the front door of the apartment building and the vacant units inside. Although he did not recall specifically who gave him the keys, he believed it was someone associated with the apartment building in either an ownership or residential capacity.

---

[2] To the extent that a finding of fact is more properly a conclusion of law, and to the extent that a conclusion of law is more properly a finding of fact, it should be so construed.

Seeing Hendon run inside, Grzywacz and his partner pursued Hendon into the building. Before they entered, they observed people inside up on the second floor. And, when they got inside, they heard movement up on the second floor as well. What Grzywacz did next is somewhat unclear–he either briefly glanced down the first floor hallway or he briefly checked the doors to the first floor apartments that were on his list. What is clear, however, is that he then made his way to the second floor, whereupon he and his partner entered apartment 201–a unit that Grzywacz knew to be vacant.

In the apartment, the officers encountered three men–Jason Manning, Gregory Hendon, and David Griffin. Hendon was seated at a table, upon which there was a large sum of money (later determined to be just under $3,000), lotto folds, narcotics, and a scale. There was also a shotgun resting in the corner by the door. After securing the apartment, the officers arrested all three men.

Grzywacz's description of apartment 201 is corroborated by a statement made by Griffin to Officer Zberkot and others during a proffer on April 10, 2018. The proffer agreement obligated Griffin to tell the truth as to the events on August 3, 2013, and threatened various legal consequences if he failed to do so. During the proffer, Griffin stated that he did not live at 473 Peterboro on the date in question. Instead, he characterized apartment 201–a vacant apartment with very little furniture–as a drug den. He had been using the apartment on and off for about three weeks to smoke marijuana and drink beer.

Now, Griffin did not testify to this at the suppression hearing, invoking his Fifth Amendment privilege for almost every question posed. Instead, Zberkot's testimony relayed the statements Griffin made during the proffer. Defendants objected to the introduction of Griffin's

4

statements in this manner, arguing that Zberkot's testimony was inadmissible hearsay and that it violated their Confrontation Clause rights. But neither objection has merit.

As to the hearsay objection, the Rules of Evidence do not apply to evidence presented at suppression hearings. *United States v. Stepp*, 680 F.3d 651, 668 (6th Cir. 2012). So, the Court may rely on hearsay evidence, *United States v. Raddatz*, 447 U.S. 667, 679 (1980), so long that it is "credible and competent." *United States v. Kellog*, 202 F. App'x 96, 106 (6th Cir. 2006). In other words, the court "may accept hearsay evidence at a suppression hearing if the court is satisfied that the statements were made and that there is nothing to raise serious doubt about their truthfulness." *United States v. Boyce*, 797 F.2d 691, 693 (8th Cir. 1986).

The Court is so satisfied here. Griffin's statement was made under a proffer agreement that obligated him to tell the truth. Indeed, he had little incentive to lie–the agreement pledged that his statement would not be used against him and threatened criminal charges for any falsehoods. And Griffin confirmed during his testimony at the suppression hearing that he had told the truth during his proffer. Also, the credibility of his proffer statement is bolstered by its contents–the statement was consistent with Grzywacz's testimony that apartment 201 was a vacant unit. *See United States v. Matlock*, 415 U.S. 164, 176 (1974) (affirming the admission of hearsay statements that were "corroborated by other evidence received at the suppression hearings[.]"). Finally, the record contains no indication that Griffin harbored any "hostility or bias" against Defendants that would call the credibility of his statements into question.[3] *See id*. at 175. For these reasons, the Court does not doubt the truthfulness of Griffin's statement.

---

[3] Both Defendants have referred to alleged promises made to Griffin by the Government or to Griffin's alleged willingness to help the Government to avoid felony charges. *See, e.g.*, 5/29/18 Tr., p. 37; Supp. Br. of Def. Manning, p. 20 n. 11. But these references are to materials not in the record and the Court will not consider them.

Nor does the admission of this statement violate Defendants' Confrontation Clause rights. "[T]he right of confrontation does not apply to the same extent at pretrial suppression hearings as it does at trial." *Boyce*, 797 F.2d at 693. For example, permitting an arresting officer to testify at a suppression hearing about what an informant told him about the defendant does not violate the Confrontation Clause. Nor does admitting the testimony of an agent about the contents of the arresting officer's police report and the statements that officer had made to him about the case. *Boyce*, 797 F.2d at 693. The Court sees no basis (and Defendants have offered none) for distinguishing Zberkot's testimony about Griffin's proffer statement from these cases.

Jason Manning's version of events, however, differed from the one described by Griffin and Grzywacz. He testified that Hendon and Griffin were already inside apartment 201 when he arrived on the evening of the arrest. Manning knew Griffin well–they had been friends for over 20 years. Apartment 201 was Griffin's residence; Griffin had keys to the apartment, the utilities were on, and the apartment was furnished. In fact, Griffin was just one of several different tenants that Manning had seen across the three floors of 473 Peterboro.

On the night in question, Manning was simply enjoying some drinks and smoking some marijuana with Hendon and Griffin. He testified that he had planned on likely spending the night in the apartment, which he had already done the past two nights. But this plan did not come to fruition. Manning had only been in the apartment for about a half hour to an hour before officers disrupted his night by barging into the apartment and arresting those inside.

Yet this is not the same story that Manning first told investigators. In June 2017, after he had been arrested on the criminal complaint, Manning gave a statement to law enforcement officials. He said that he had been at 473 Peterboro to see a girl on the first floor. When the

6

police arrived, he ran with the crowd and randomly ended up in apartment 201 with Hendon and a third person whose identity he could not remember. This was the first time Manning had ever set foot in that unit. As he characterized it, he was simply in the wrong place at the wrong time.

Faced with Manning's shifting statements, the Court does not find him to be a credible witness. Manning's hearing testimony diverges from all of the other evidence the Court has received, which consistently described apartment 201 as vacant. And, during the hearing, Manning denied making certain statements that he had unequivocally made in June 2017, such as that apartment 201 was vacant. He also inexplicably claimed that while he was in the unit he did not see the shotgun or any narcotics other than the marijuana he was smoking. The Court declines to give credence to this inconsistent testimony.

Instead, the Court credits the testimony of Sergeant Grzywacz. The crux of his testimony is clear; while on patrol near an apartment building he was very familiar with, Grzywacz saw Hendon, followed him into 473 Peterboro, entered apartment 201, and discovered Hendon and Manning inside with the contraband seized. This unit, Grzywacz knew, was vacant, a fact corroborated by Griffin's statement and Manning's initial statement to police. Although Defendants identify various inconsistencies in Grzywacz's testimony, these inconsistencies concern minor details and are hardly surprising given that the arrest occurred almost five years ago. On the key issue–the occupancy status of apartment 201–Grzywacz's testimony was clear and consistent: he knew that apartment 201 was vacant, a fact that makes all the difference.

## CONCLUSIONS OF LAW

Defendants' challenge to the warrantless entry into apartment 201 must overcome a key hurdle–they must show that they had a reasonable expectation of privacy in the apartment. *See*

*Minnesota v. Carter*, 525 U.S. 83, 88 (1998) ("[T]o claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable[.]"); *see also United States v. McRae*, 156 F.3d 708, 711 (6th Cir. 1998) ("A defendant bears the burden of establishing that his own Fourth Amendment rights were violated."). To establish this, they must show that they (1) had a subjective expectation of privacy in the premises and (2) that their expectation was objectively reasonable, that is, one that "society is prepared to recognize as legitimate." *United States v. Washington*, 573 F.3d 279, 282 (6th Cir. 2009), quoting *United States v. Pollard*, 215 F.3d 643, 647 (6th Cir. 2000). Defendants have not met their burden.

The reason is simple: Defendants were trespassing in a vacant apartment. "[T]hose who inhabit a residence wrongfully may not claim a legitimate expectation of privacy in the property." *United States v. Whitehead*, 415 F.3d 583, 587 (6th Cir. 2005); *see also McRae*, 156 F.3d at 711 (holding the defendant lacked a legitimate expectation of privacy when he stayed for a week in vacant premises that he did not own or rent). So, Defendants could not and did not have an objectively reasonable expectation of privacy in apartment 201 when the police entered. Absent that, they cannot claim that the warrantless entry into the apartment and subsequent seizure of the persons and evidence inside violated their Fourth Amendment rights.

Hendon, however, also offers two alternative theories in favor of suppression. He first appears to argue that the officers' decision to chase him into the apartment building, absent any reasonable suspicion of criminal activity, violated the Fourth Amendment. This is incorrect.

The Fourth Amendment protects against "unreasonable searches and seizures." So, naturally, it is not implicated unless a search or seizure occurs. *See Terry v. Ohio*, 392 U.S. 1, 16

8

(1968). Relevant here, a seizure of a person occurs when an "officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Id.* at 19 n. 16. When a show of authority is involved, however, the suspect *must yield* to that show of authority for a seizure to take place. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991); *see also Brendlin v. California*, 551 U.S. 249, 254 (2007) ("[T]here is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned."). If not, if a suspect chooses flight over submission, a seizure has not yet occurred.

That is what happened here. Hendon fled into the nearby apartment building almost immediately upon observing Grzywacz and his partner. So, whether the officers had reasonable suspicion of criminal activity at that point is irrelevant. Even if their decision to follow Hendon into the building was, in fact, a show of authority, no seizure (and thus no Fourth Amendment violation) occurred because Hendon chose to flee.

Hendon's second argument fares no better. He urges that the egregious police misconduct in this case justifies suppressing the evidence. But he does not explain how an allegation of egregious misconduct can allow him to circumvent the threshold issue of whether he had a reasonable expectation of privacy in apartment 201. *See Carter*, 525 U.S. at 88. And, in any event, his argument rests on the faulty premise that Grzywacz committed egregious misconduct. As the facts show, this is not so. Grzywacz sought to make contact with a suspected narcotics trafficker and, when he abruptly fled, followed him into a known vacant apartment where he discovered narcotics and a firearm. This conduct was reasonable.

## CONCLUSION AND ORDER

For the reasons above, IT IS ORDERED that Defendants' Motion to Suppress is

9

DENIED.

      IT IS SO ORDERED.

                                              s/Sean F. Cox  
                                              Sean F. Cox  
                                              United States District Judge

Dated: June 27, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 27, 2018, by electronic and/or ordinary mail.

                                        s/Jennifer McCoy  
                                        Case Manager